Case No. 24-1509

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

## JAMIE GAVIN; JHAMYA WINTERS; TIFFANIE WOLF; MELISSA SPEAKER; JAMIE LINDQUIST; CHLOE KERTESZ; KIM BURNS

Plaintiffs-Appellants

v.

## LADY JANE'S HAIRCUTS FOR MEN HOLDING COMPANY, LLC; LADY JANE'S CLEARWATER FL, LLC; LADY JANE'S MOORE OK, LLC; LADY JANE'S SUNSET HILLS MO, LLC; CHAD JOHNSON; TIM McCOLLUM; JESSE DHILLON; ALICIA BUNCH; JOHN DOE, 1-10; DOE CORPORATION, 1-10

Defendants-Appellees

_____

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:23-cv-12602-SJM-APP

_____

## BRIEF OF APPELLEES

_____

Dated:    October 21, 2024

Nicole S. LeFave
Neil B. Pioch
Andrew Klaben-Finegold
LITTLER MENDELSON, P.C.
500 Woodward Avenue, Suite 2600
Detroit, MI  48226-3416
Telephone:  313.446.6400
Facsimile:  313.446.6405
E-mail:     nlefave@littler.com
            npioch@littler.com
            aklaben@littler.com
*Attorneys for Defendants-Appellees*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**JAMIE GAVIN, *et al.*,**

          Plaintiffs−Appellants,

    v.

**LADY JANE'S HAIRCUTS FOR
MEN HOLDING COMPANY, LLC,
*et al.*,**

          Defendants−Appellees.

Case No. 24-1509

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to Sixth Circuit Rule 26.1, Defendants-Appellees Lady Jane's Haircuts For Men Holding Company, LLC; Lady Jane's Clearwater FL, LLC; Lady Jane's Moore OK, LLC; and Lady Jane's Sunset Hills MO, LLC make the following disclosures:

**I.**    Are said parties a subsidiary or affiliate of a publicly owned corporation?

<u>ANSWER</u>:  No.

If the answer is Yes, list below the identity of the parent, subsidiary or other affiliate corporation and the relationship between it and the named party:

<u>N/A                                                                      </u>

**II.**     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

ANSWER:  No.

If the answer is Yes, list the identity of such corporation and the nature of the financial interest:

N/A


*/s/ Nicole S. LeFave*                              October 21, 2024

Nicole S. LeFave                              Date

# TABLE OF CONTENTS

**PAGE**

DISCLOSURE OF CORPORATE AFFILIATIONS AND
FINANCIAL INTERESTS.............................................................i

TABLE OF CONTENTS...............................................................iii

TABLE OF AUTHORITIES ..........................................................v

STATEMENT REGARDING ORAL ARGUMENT ..........................vii

I.      JURISDICTIONAL STATEMENT ................................................1

II.     STATEMENT OF THE ISSUES ..................................................2

III.    INTRODUCTION ....................................................................3

IV.     STATEMENT OF THE CASE ....................................................7

        A.      Plaintiffs Agreed To Arbitrate Their Disputes With Defendants ........7

        B.      Plaintiffs Refused To Abide By Their Binding Agreements To
                Arbitrate.............................................................................9

        C.      The District Court Ordered Plaintiffs To Arbitrate............................10

V.      SUMMARY OF THE ARGUMENT ............................................13

VI.     ARGUMENT..........................................................................15

        A.      The District Court Applied The Correct Legal Standard In
                Interpreting The Parties' Arbitration Agreement................................15

        B.      The District Court Severed A Provision It Deemed
                Unenforceable ...................................................................19

                1.      The District Court Appropriately Applied The
                        Agreement's Severance Provision ...........................................19

                2.      The District Court Did Not Reform The Agreement..............21

# TABLE OF CONTENTS

(CONT'D)

PAGE

3.   The Arbitration Agreement Remains Enforceable Absent The District Court's Observation Concerning The Employment Rules ................................................................ 25

VII.  CONCLUSION .......................................................................... 30

CERTIFICATE OF COMPLIANCE ...................................................... 31

CERTIFICATE OF SERVICE .............................................................. 32

ADDENDUM—DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............................................................................. 33

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*35160 Jefferson Ave., L.L.C. v. Charter Twp. of Harrison*,
No. 303152, 2012 WL 3198457
(Mich. Ct. App. Aug. 7, 2012)................................................................20

*Chattanooga Mailers' Union, Loc. No. 92 v. The Chattanooga News
Free Press Co.*,
524 F.2d 1305 (6th Cir. 1975) ...........................................................27

*Gavin v. Lady Jane's Haircuts for Men Holding Co., LLC*,
No. 2:23-CV-12602, 2024 WL 2231667
(E.D. Mich. May 16, 2024).................................................................18

*Glazer v. Lehman Brothers*,
394 F.3d 444 (6th Cir. 2005) .................................................3, 10, 15

*Graham v. Word Enters. Perry, LLC*,
No. 18-cv-10167, 2019 WL 2959169
(E.D. Mich. June 18, 2019)................................................................21

*Great Earth Cos., Inc. v. Simons*,
288 F.3d 878 (6th Cir. 2002) ...........................................................17

*Kennedy v. Lady Jane's Haircuts for Men Holding Co., LLC, et al.*,
No. 1:23-cv-493, 2024 WL 4290260
(S.D. Ohio Sept. 25, 2024)................................................................18

*Kristian v. Comcast Corp.*,
446 F.3d 25 (1st Cir. 2006)................................................................26

*McMullen v. Meijer, Inc.*,
166 F. App'x 164 (6th Cir. 2006) ...............................................19, 23

*Melki v. Clayton Charter Twp.*,
No. 306135, 2013 WL 4504443
(Mich. Ct. App. Aug. 22, 2013).........................................................20

# TABLE OF AUTHORITIES
### (CONT'D)

**PAGE(S)**

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)....................................................................16, 19

*Olsen v. Porter*,
    539 N.W.2d 523 (Mich. Ct. App. 1995)...........................................22

*Panepucci v. Honigman Miller Schwartz and Cohn, LLP*,
    No. 05-70024, 2005 WL 8155127
    (E.D. Mich. Oct. 14, 2005) ...............................................................21

*Pugh v. Lady Jane's Haircuts for Men Holding Co., LLC*,
    660 F. Supp. 3d 712 (M.D. Tenn. Mar. 8, 2023)........................*passim*

*Samuel D. Begola Servs., Inc. v. Wild Bros.*,
    210 Mich. App. 636 (1995) ...................................................19, 20, 23

*Serv. Workers Int'l Union v. Coca-Cola Refreshments USA, Inc.*,
    906 F. Supp. 2d 731 (W.D. Mich. 2012) ...........................................22

*SL Town Ctr. Realty, LLC v. Midwest Veterinary Partners, LLC*,
    No. 361664, 2023 WL 4835517
    (Mich. Ct. App. July 27, 2023) ...........................................................19

*Theophelis v. Lansing Gen. Hosp.*,
    424 N.W.2d 478 (Mich. 1988)...........................................................22

### STATUTES

Fair Labor Standards Act of 1938, as amended
    29 U.S.C. § 201, *et seq.* ("FLSA") .............................................3, 5, 9

### OTHER AUTHORITIES

Federal Rule of Appellate Procedure 32(a) .............................................31

Federal Rule of Appellate Procedure 34(a) ........................................... viii

Sixth Circuit Rule 26.1 ......................................................................i

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), Defendants-Appellees state that oral argument is unnecessary in this matter. Several independent reasons exist for the District Court's Judgment to be affirmed, and each may be discerned plainly from the record.

## I.    JURISDICTIONAL STATEMENT

Defendants agree with the Jurisdictional Statement presented by Plaintiffs, who timely appealed from the Judgment entered in the District Court for the Eastern District of Michigan.

## II.    STATEMENT OF THE ISSUES

1.      Did the District Court err by severing, pursuant to a valid severability provision, the portion of the Parties' arbitration agreement calling for application of the AAA Commercial Rules and otherwise enforcing the remainder of the Parties' binding agreement to arbitrate?

2.      Did the District Court err in acknowledging that, following severance of the provision calling for application of the AAA Commercial Rules, the AAA Employment Rules apply to the Parties' disputes going forward by default?

### III.   INTRODUCTION

Plaintiffs and Defendants entered valid, binding, and enforceable agreements to arbitrate their disputes against each other, including the wage and hour claims Plaintiffs brought pursuant to the Fair Labor Standards Act and various state law equivalents. The District Court properly enforced the arbitration agreements, applying the factors set forth by this Court in *Glazer v. Lehman Brothers*, 394 F.3d 444 (6th Cir. 2005). Order, R.55, PageID#1299–1301.

Plaintiffs sought to escape their agreements to arbitrate. They argued that the agreements were void, unconscionable, and against public policy because they required the arbitrator to enforce Defendants' policies and procedures rather than the applicable law. Order, R.55, PageID#1302. The District Court rejected this argument as "incorrect," finding the arbitration agreements did "no such thing." *Id.*

Plaintiffs further argued the arbitration agreements were contracts of adhesion, through which Defendants attempted to contract around the FLSA without negotiation or bargaining. But the District Court concluded that Plaintiffs "offered no factual support for that claim" and rejected it. Order, R.55, PageID#1303.

Lastly, Plaintiffs argued that the arbitration agreements' provision calling for application of the American Arbitration Association ("AAA") Commercial Rules was cost-prohibitive, such that it would preclude Plaintiffs from effectively vindicating their rights. The District Court agreed and ordered that the five words of

the arbitration agreements calling for application of the AAA Commercial Rules to be severed. Order, R.55, PageID#1303–06. In concluding its analysis, the District Court remarked, "Going forward, the agreement must be governed by the AAA's default employment arbitration rules," citing to *Pugh v. Lady Jane's Haircuts for Men Holding Co., LLC*, 660 F. Supp. 3d 712 (M.D. Tenn. Mar. 8, 2023). *Id.*, PageID#1306.

Plaintiffs premise their appeal primarily on this single sentence in the District Court's 17-page opinion. Plaintiffs incorrectly assert that the District Court's acknowledgment that the AAA Employment Law rules must govern this matter by default going forward amounts to an improper reformation of the Parties' arbitration agreements. Plaintiff's argument is incorrect.

By citing to *Pugh*, a decision from the Middle District of Tennessee interpreting the exact same arbitration agreement at issue here, the District Court acknowledged the *Pugh* Court's extensive analysis of the same questions before the District Court—the enforceability of the provision calling for the application of the AAA Commercial Rules and the severability of that provision. *See generally Pugh*, 660 F. Supp. 3d at 720–26. *Pugh* found the application of the AAA Commercial Rules cost-prohibitive, and therefore unenforceable, and severed that provision from the arbitration agreement, leaving the rest of the arbitration agreement intact. *Id.* at 724–26.

In its opinion, the *Pugh* Court acknowledged that an FLSA claim "is clearly an employment-related dispute." *Id.* at 725. After finding the reference to the AAA Commercial Rules should be severed, the *Pugh* Court explained:

> Upon removal of the reference to the AAA Commercial Rules, the **default** AAA rules that would apply to this dispute would be the AAA Employment Arbitration Rules and Mediation Procedures ("AAA Employment Rules"), Rule 1 of which states that the AAA Employment Rules "shall be deemed to have [been] made . . . a part of [the parties'] arbitration agreement" **whenever that agreement provides for arbitration by the AAA "of an employment dispute without specifying particular rules**."

*Id.* (quoting AAA Employment Rule 1) (brackets in original) (emphasis added). The *Pugh* Court observed that application of the AAA Employment Rules, with their fee schedule and rules governing the payment of fees by the employer, "obviates the plaintiffs'—and any similarly situated potential claimants'—concerns about shouldering part of the costs of arbitration." *Id.* at 726.

In short, the *Pugh* Court confirmed that, once the reference to the AAA Commercial Rules was severed, the agreement became silent as to which rules should apply, but still called for arbitration to proceed before the AAA. When the applicable arbitration agreement is silent as to choice-of-rules, the AAA itself requires that the default AAA Employment Rules apply to employment-related disputes. According to the *Pugh* Court, application of the AAA Employment Rules is not cost-prohibitive. The District Court adopted this analysis by reference. Order, R.55, PageID#1306.

The District Court did not reform the Parties' arbitration agreements by improperly writing in a provision calling for the application of the AAA Employment Rules. The District Court, like the *Pugh* Court before it, merely acknowledged the practical reality of severing the provision that calls for application of the AAA Commercial Rules. Absent the AAA Commercial Rules, in this employment-related dispute that the Parties agreed would proceed before the AAA, the default rules that must apply are the AAA Employment Rules. Those rules apply because not because the District Court or the *Pugh* Court ordered it to be so, but because those are the rules that the AAA will apply.

Plaintiffs' contention that the District Court reformed the Parties' arbitration agreements by acknowledging this practical reality should be rejected and the District Court's ruling should be affirmed.

### IV.   STATEMENT OF THE CASE

### A.     Plaintiffs Agreed To Arbitrate Their Disputes With Defendants

Plaintiffs are independent contractors who provided hair stylist services at Lady Jane's salons in Florida, Missouri, Oklahoma, and New York. Bunch Decl., R.31-2, PageID#322 ¶¶ 4–8. Each of them executed an Independent Contractor Agreement ("Agreement") with the salon or salons at which the stylist performed services. *Id.* ¶ 3. Included in each Agreement is an arbitration provision, requiring the stylist to arbitrate any dispute related to their provision of hair stylist services. *See, e.g.*, *Id.* at Ex. 1, PageID#328 ¶ 11. Plaintiffs Gavin, Winters, Wolf, and Speaker each entered into such Agreements and, in so doing, agreed to arbitrate all claims arising from their independent contractor relationships.[1] *Id*. at Exs. 1–4, PageID#326–54.

Specifically, the Agreement provides in Paragraph 11:

LJ and CONTRACTOR agree to use binding arbitration, *instead of going to court*, for any "Covered Claims" that arise or have arisen between CONTRACTOR and LJ and/or any current or former employee of LJ. . . .**The parties understand and agree that**

---

[1] After the lawsuit's filing, additional individuals filed consents to join, including Jamie Lindquist (R.46, PageID#1208–12), Chloe Kertesz (R.50, PageID#1239–43), Kimberly Burns (R.53, PageID#1264–68), Maggie Iglesias (R.59, PageID#1316–20), Genny Rice (R.60, PageID#1321–25), and Dana Malfara (R.61, PageID#1326–30). Each of them signed Agreements with arbitration provisions. *See, e.g.*, R.47, PageID#1213–23; R.51, PageID#1244–53; R.54, PageID#1269–93. Defendants did not supplement the District Court record with signed Agreements for Iglesias, Rice, and Malfara because the District Court dismissed this case before their consents were filed.

> **arbitration is the only forum for resolving Covered Claims, and that both parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.**
>
> This Agreement covers and applies to any and all claims . . . relating to the CONTRACTOR's relationship with LJ or the termination of that relationship. . . . The Agreement covers and applies to . . . any and all Covered Claims for which CONTRACTOR has a cause of action, including but not limited to claims for breach of contract or covenant (express or implied) . . . failure to pay wages, overtime, compensation, or other remuneration; any Covered Claims against the directors, officers, insurers, or employees of LJ or its affiliated entities; and any and all disputes concerning the arbitrability of any claim.

*See, e.g.*, *Id.* at Ex. 1 ¶ 11, PageID#328 (italics added, bold in original).

Additionally, the Agreement includes a waiver of the right to bring claims on a class or collective basis:

> CONTRACTOR agrees that Covered Claims will be arbitrated only on an individual basis, and that both CONTRACTOR and LJ waive the right to participate in or to receive money or any other relief from any class, collective, or representative proceedings. . . . By signing this Agreement, the Parties waive any substantive or procedural rights they may have to bring an action on a class, collective, representative, or other similar basis against each other.

*Id.* at PageID#328–29.

The Agreement calls for arbitration proceedings to "be administered by the American Arbitration Association under its Commercial Arbitration Rules . . . ." *Id.* at PageID#328. Claims covered by the Agreement explicitly include claims for "failure to pay wages, overtime, compensation, or other remuneration . . . ." *Id.*

The Agreement also includes a severability clause. The severability clause makes clear: "If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way." *Id.* ¶ 9. Through this clause, the Parties clearly manifested their intent that any provision of the Agreement may be severed without affecting the enforceability of the remining provisions of the Agreement.

## B.    Plaintiffs Refused To Abide By Their Binding Agreements To Arbitrate

This matter was filed on October 16, 2023. Compl., R.1, PageID#1–92. Before Defendants' responsive pleading deadline passed, Plaintiffs filed a Motion to Send FLSA Notice and then objected to Defendants' request for an extension of time to respond to that motion. Pls.' Mot. To Send Notice, R.24, PageID#140–211; Pls.' Resp. to Ext., R.27, PageID#220–27. On December 16, 2023, Defendants filed a Motion to Dismiss in favor of arbitration, citing Plaintiffs' binding and enforceable agreements to arbitrate. Defs.' Mot. To Dismiss, R.31, PageID#280–317. Defendants then filed a Motion to Stay Plaintiffs' Motion to Send FLSA Notice and their Response in Opposition to Plaintiffs' Motion to Send FLSA Notice. Defs.' Mot. To Stay, R.32, PageID#842–57; Defs.' Resp. to Notice, R.33 PageID#940–42. The District Court considered all motions and entered its order compelling Plaintiffs to arbitrate their claims on May 16, 2024. Order, R.55, PageID#1294–1310.

**C.      The District Court Ordered Plaintiffs To Arbitrate**

The District Court properly enforced the arbitration agreements, applying the factors set forth by this Court in *Glazer v. Lehman Brothers*, 394 F.3d 444 (6th Cir. 2005), rejecting Plaintiffs arguments that the Agreements were void, unconscionable, against public policy, or were contracts of adhesion. Order, R.55, PageID#1299–1303. Among their points of contention, Plaintiffs opposed the Agreement's provision calling for application of the AAA Commercial Rules, arguing that the provision was cost-prohibitive and effectively prevented them from vindicating their rights. Pls. Resp. R.44, PageID#1064–67. On this point only, the District Court agreed. The District Court followed the *Pugh* Court, which interpreted an identical provision, and severed five words from the Agreement—"under its Commercial Arbitration Rules." Order, R.55, PageID#1305–06. The District Court otherwise held the arbitration agreement was fully enforceable and ordered Plaintiffs to arbitrate their disputes with Defendants. *Id.*

The District Court ended its analysis with a reference to *Pugh*. Order, R.55, PageID#1306. The relevant language in *Pugh* acknowledges:

> Upon removal of the reference to the AAA Commercial Rules, the **default** AAA rules that would apply to this dispute would be the AAA Employment Arbitration Rules . . . Rule 1 of which states that the AAA Employment Rules "shall be deemed to have [been] made . . . a part of [the parties'] arbitration agreement" **whenever that agreement provides for arbitration by the AAA** "of an employment dispute **without specifying particular rules**."

10

660 F. Supp. 3d at 725 (quoting AAA Employment Rule 1) (brackets in original) (emphasis added). The *Pugh* Court observed that application of the AAA Employment Rules, with their fee schedule and rules governing the payment of fees by the employer, "obviates the plaintiffs'—and any similarly situated potential claimants'—concerns about shouldering part of the costs of arbitration." *Id.* at 726. The *Pugh* Court's analysis confirmed that, because the arbitration agreement called for arbitration to proceed before the AAA, the default AAA Employment rules would apply and application of those rules would not be cost-prohibitive. *Id.* at 725–26.

Before this Court, Plaintiffs do not appeal the validity of their Agreements or the arbitration agreement contained therein. They further do not contest whether they signed their Agreements or whether the Agreements cover their claims. Rather, the appeal here is limited to whether the District Court erred in severing an unenforceable provision in an otherwise enforceable Agreement. Although Plaintiffs characterize this action as an impermissible reformation of the Agreement, the record plainly demonstrates the District Court merely severed a provision it deemed cost-prohibitive and did not reform the Agreement.

The District Court's acknowledgment that the AAA Employment Rules apply to this employment dispute before the AAA is not an impermissible reformation of the Agreement. The District Court did not rewrite the Agreement. It did not reference

11

or apply the legal concept of reformation. It merely recognized that, once the reference to the AAA Commercial Rules was severed, the AAA Employment Rules would govern by default. The District Court's observation does not amount to an unlawful reformation. The District Court's opinion should be affirmed.

## V.    SUMMARY OF THE ARGUMENT

The District Court appropriately enforced the Parties' agreement to arbitrate. Based on a fundamental misunderstanding of the District Court's opinion, on appeal, Plaintiffs ask this Court to find the entire arbitration agreement unenforceable because, in their view, the District Court improperly reformed it by severing five words and acknowledging the practical reality that the AAA Employment Rules would govern the Parties' disputes in arbitration.

Plaintiffs misconstrue the nature of the action taken by the District Court. Consistent with Michigan and Sixth Circuit law, the District Court followed well-established principles of contract interpretation in finding the Agreement's arbitration agreement enforceable. Order, R.55, PageID#1298–1306. In response to Plaintiffs' argument that the AAA Commercial Rules were cost-prohibitive, the District Court severed the portion of the Agreement calling for the application of those rules, pursuant to the Agreement's severance provision. *Id.* at 1305–06.

The District Court then acknowledged that, once the Parties proceed in arbitration before the AAA, the only rules that can apply to this dispute are the default AAA Employment Rules. *Id.* (citing *Pugh*, 660 F. Supp. 3d at 725); *see also Pugh*, 660 F. Supp. 3d at 725–26. This acknowledgment was not an improper reformation of the arbitration agreement.

13

Plaintiffs offer this Court no credible or persuasive basis upon which to reverse the holding of the District Court. In all respects, its Order should be affirmed.

## VI.   ARGUMENT

Plaintiffs' appeal is limited to the issue of whether the District Court acted inappropriately in acknowledging that this dispute should be governed by the AAA Employment Rules. Plaintiffs characterize this finding as a "reformation" of the Agreement's terms, which Plaintiffs claim is unlawful absent fraud or mistake. Plaintiffs do not quarrel with the District Court's reasoning, beyond emphasis on a single sentence that recognizes the practical reality that *some* rules will govern the Parties' dispute before the AAA, and that, in the absence of the AAA Commercial Rules, it must be the AAA Employment Rules that govern this employment-related dispute. The District Court's commonsense observation was not error and the decision should be affirmed.

### A.   The District Court Applied The Correct Legal Standard In Interpreting The Parties' Arbitration Agreement

As an initial matter, in ordering the Parties to arbitration, the District Court properly relied on the factors articulated in *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005), including: (1) whether the parties agreed to arbitrate; (2) the agreement's scope; (3) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (4) whether to stay the proceedings if some claims are not arbitrable. Order, R.55, PageID#1299–1301.

The District Court correctly found that the clear and unmistakable intent of the Parties to the Agreement was to arbitrate their disputes. The relevant section of

the Agreement is titled "Arbitration" and comprises nearly an entire page of the two-and-a-half-page Agreement. *See, e.g.*, Bunch Decl., R.31-2, Ex. 1, PageID#327–29. Further, while the entire Agreement is 1,701 words, the Section titled Arbitration is 806 words, or 47.4% of the entire Agreement. *Id*. Its language is clear and unambiguous: "The parties understand and agree that arbitration is the only forum for resolving Covered Claims, and that both parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims." *Id.* at Ex. 1, PageID#328 The District Court properly concluded that the Parties clearly agreed to arbitrate their disputes.

The District Court also correctly concluded that the Plaintiffs' claims fell within the broad scope of the Agreement's arbitration provision, which covers, *inter alia*, claims for "failure to pay wages, overtime, compensation, or other remuneration . . . ." *Id.* at PageID#328; R.55, PageID#1300. The District Court found no evidence that Congress intended these claims to be non-arbitrable and accordingly ordered that Plaintiffs should be compelled to arbitrate them. Order, R.55, PageID#1301.

The record simply contains no evidence to support Plaintiffs' contention that the District Court ran afoul of the United States Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), by applying special interpretive rules to the Agreement's arbitration provision. For example, although the District Court recited

the proposition that any ambiguities in the Agreement or doubts as to the Parties' intentions should be resolved in favor of arbitration, *see* Order, R.55, PageID#1298 (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)), the District Court found ***no such ambiguities or doubts***. *See id*., PageID#1298–1301. In other words, recitation of this principle, absent any evidence that the District Court actually applied it, cannot demonstrate that the District Court acted inappropriately. Plaintiffs cite to no evidence beyond their own incorrect characterization of the District Court's actions as "reformation" in support of this contention.

What Plaintiffs call "reformation" is nothing more than simple severance, not a novel rule that favors arbitration over litigation. As explained below, the District Court concluded that application of the AAA Commercial Rules was cost-prohibitive, and therefore unenforceable. The District Court accordingly severed from the Agreement the five words calling for their application. Order, R.55, PageID#1305–06. The District Court then cited to its sister court's opinion in *Pugh*, which interpreted an identical agreement and acknowledged the default rules that apply before the AAA in an employment dispute are the AAA Employment Rules, which are not cost-prohibitive. Order, R.55, PageID#1306 (*citing Pugh*, 660 F. Supp. 3d at 725).

A third court in the Sixth Circuit recently concluded the same. On September 25, 2024, Judge Michael R. Barrett in the Southern District of Ohio issued his ruling

in a related action, interpreting the same Agreement with the same arbitration provision. Judge Barrett, citing *Pugh* and the District Court below, also held that the AAA Commercial Rules were cost-prohibitive, but severable, and noted that both *Pugh* and the District Court below previously concluded "the AAA Employment Arbitration Rules and Mediation Procedures ***governed by default***." *Kennedy v. Lady Jane's Haircuts for Men Holding Co., LLC, et al.*, No. 1:23-cv-493, 2024 WL 4290260, at \*\*4–5 (S.D. Ohio Sept. 25, 2024) (citing *Pugh,* 600 F. Supp. 3d at 725; *Gavin v. Lady Jane's Haircuts for Men Holding Co., LLC*, No. 2:23-cv-12602, 2024 WL 2231667, at \*5 (E.D. Mich. May 16, 2024)) (emphasis added).[2]

The innate weakness of Plaintiffs' position is laid bare in their own briefing before the District Court, in which they affirmatively acknowledged that the AAA Employment Rules ***should*** apply to their disputes: "Normally, disputes like this are governed by the AAA's employment rules. Those rules require employers to pay the fees and costs of arbitration that go beyond those that are present in a lawsuit."[3] Plfs.'

---

[2] Plaintiffs sought a stay of the *Kennedy* order, but as of the date of this filing have not appealed it. *See Kennedy*, No. 1:23-cv-493 at R.52. Defendants oppose the stay.

[3] The AAA has the following rules and procedures: Commercial Arbitration Rules and Mediation Procedures; Construction Industry Arbitration Rules and Mediation Procedures; Consumer Arbitration Rules; Employment Arbitration Rules and Mediation Procedures; Labor Arbitration Rules; International Dispute Resolution Procedures; Consumer Mass Arbitration; Employment Mass Arbitration; Non-Consumer/Non-Employment Mass Arbitration; Illinois Uninsured/Underinsured Motorist Arbitration and Mediation Rules; and Optional Appellate Arbitration Rules. *See* https://www.adr.org/Rules (last accessed October 2, 2024).

Resp., R.44, PageID#1064 (citation omitted). The District Court's order is wholly in accord with Plaintiff's own acknowledgment.

Plaintiffs now attempt to walk back their acknowledgment by accusing the District Court of improperly reforming the Agreement under some novel theory. But the District Court did not apply an arbitration-specific rule of contract law. The District Court acted wholly consistent with *Morgan* and the edicts of Michigan contract law. There is no basis for this Court to reverse the District Court's order dismissing this case in favor of arbitration.

**B.    The District Court Severed A Provision It Deemed Unenforceable**

### 1.    *The District Court Appropriately Applied The Agreement's Severance Provision*

The District Court was empowered under applicable law to sever the provision of the Agreement calling for application of the AAA Commercial Rules, which it deemed an invalid fee-shifting provision. Order, R.55, PageID#1305–06. Michigan contract law "provides that the failure of a distinct part of a contract does not void valid, severable provisions." *McMullen v. Meijer, Inc.*, 166 F. App'x 164, 168 (6th Cir. 2006) (per curiam) (citing *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 641 (1995)).

"In deciding when one term of a contract is severable from the other, the primary consideration is the intention of the parties." *SL Town Ctr. Realty, LLC v. Midwest Veterinary Partners, LLC*, No. 361664, 2023 WL 4835517, at *8 (Mich.

Ct. App. July 27, 2023) (citing *Wild Bros.*, 210 Mich. App. at 641); *see also Melki v. Clayton Charter Twp.*, No. 306135, 2013 WL 4504443, at *8 (Mich. Ct. App. Aug. 22, 2013) ("Whether a contract is severable depends on the intent of the parties." (citation omitted)); *35160 Jefferson Ave., L.L.C. v. Charter Twp. of Harrison*, No. 303152, 2012 WL 3198457, at *3 (Mich. Ct. App. Aug. 7, 2012) (per curiam) ("The intent of the parties is the primary consideration in determining where part of a contract is severable." (citation omitted)).

Parties clearly manifest their intent that a contract provision may be severed by including a severability clause in their contract. *See, e.g.*, *Melki*, 2013 WL 4504443, at *8 (finding severability clause demonstrated parties' intent that void portion of contract could be severed and the remaining contract would "have continuing force and effect"). In the instant case, the Parties did just that— manifested their unequivocal intent by including a severability clause in the Agreement. The severability clause makes clear: "If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way."[4] Bunch Decl., R.31-2, Ex. 1 ¶ 9, PageID#328.

---

[4]As the Court in *Pugh* noted, "provision" is undefined, but the Agreement refers to numbered paragraphs as "Sections." *Pugh*, 660 F. Supp. 3d at 724–26; *see also, e.g.*, Bunch Decl., R.31-2, Ex. 1 ¶¶ 8, 11, PageID#328. In absence of a precise definition in the document itself, the Court here, like the *Pugh* Court, should broadly construe

Courts in Michigan, applying Michigan rules of contract interpretation, regularly enforce severability clauses, including severing fee-shifting provisions they deem to be invalid. *See Graham v. Word Enters. Perry, LLC*, No. 18-cv-10167, 2019 WL 2959169, *4 (E.D. Mich. June 18, 2019) ("Courts within this District have agreed that invalid fee-shifting provisions are severable from the remainder of an arbitration agreement." (citation omitted)); *Panepucci v. Honigman Miller Schwartz and Cohn, LLP*, No. 05-70024, 2005 WL 8155127, at *1 (E.D. Mich. Oct. 14, 2005) ("[T]he issue of shared costs and fees can be corrected through severability of the clause, if appropriate, at the time that needs to be addressed. Michigan law clearly allows for such severance . . . .").

The clear and unmistakable intent of the Parties was to arbitrate their disputes and to sever any invalid, void, or unenforceable provision that stood in the way of arbitration. The District Court therefore acted appropriately in severing the fee-shifting provision.

### 2.    *The District Court Did Not Reform The Agreement*

The District Court's observation that the AAA Employment Rules must apply to this dispute once the AAA Commercial Rules were severed does not amount to an improper reformation of the Agreement. At no point does the District Court's

---

the term "provision" to include a sentence, word, or phrase. *See Pugh*, 660 F. Supp. 3d at 725.

Order reference or apply the legal concept of reformation. Defendants did not request reformation, but instead requested only, consistent with the Agreement's severance provision, that the District Court sever any provision of the Agreement it deemed unenforceable. Defs.' Reply R.45 n.5, PageID#1169–70. The District Court did precisely that, severing the five words that called for application of the AAA Commercial Rules.

While reformation and severance may appear to have similar results, they are entirely different procedures.[5] Contract reformation is done at the request of a party based on clear and convincing evidence that a written agreement does not conform to the agreement actually made, and must be supported by credible evidence of fraud or mutual mistake. *See, e.g.*, *Local Union 2-2000 United Steel, Paper* & *Forestry, Rubber, Mfg., Energy, Allied-Indus., Chem.* & *Serv. Workers Int'l Union v. Coca-Cola Refreshments USA, Inc.*, 906 F. Supp. 2d 731, 741 (W.D. Mich. 2012) ("The burden of proof is on the party seeking reformation"); *Theophelis v. Lansing Gen. Hosp.*, 424 N.W.2d 478, 492 (Mich. 1988) ("[P]laintiffs' request for reformation is made for the first time on appeal."); *Olsen v. Porter,* 539 N.W.2d 523, 525 (Mich. Ct. App. 1995) (ruling on plaintiff's request for reformation).

---

[5] Plaintiffs seemingly acknowledged the difference in the District Court, arguing first that the contract should not be reformed, and then later that the offending clause should not be severed. Plfs.' Resp., R.44, PageID#1067–68.

No Party requested reformation of the Agreement before the District Court and no evidence was presented in support of reformation. None of the Parties contended that the Agreement as written did not conform to the agreement the Parties intended to make or that there was any fraud or mutual mistake regarding the formation of the Agreement. The record further contains no support for the conclusion that the District Court engaged in any analysis whatsoever concerning reformation of the Agreement. Simply put, the Court did not reform the arbitration agreement.

On the other hand, severance of an unenforceable provision can be done by a court pursuant to the terms of the contract before it. *See, e.g.*, *Meijer*, 166 F. App'x at 168 (severing offending provision of arbitration agreement since parties' intent to arbitrate clearly demonstrated an agreement even absent express severability clause); *see also Wild Bros.*, 210 Mich. App. at 641 (severing offending provision at request of a party since the clear intent of the parties was manifest in the agreement via severability provision). Here, Defendants specifically requested that the District Court sever—not reform—any provision of the Agreement it deemed unenforceable. Defs.' Reply, R.45, PageID#1169 at n.5.

The District Court clearly and unmistakably stated in its ruling that it "will therefore *sever* the phrase 'under its Commercial Arbitration Rules' from the arbitration provision of the employment agreement." Order, R.55, PageID#1305–06

(emphasis added). Upon severing those five words from the Agreement, the District Court, following *Pugh*, merely stated the obvious—that the AAA Employment Rules would apply going forward. As the *Pugh* Court explained:

> Upon removal of the reference to the AAA Commercial Rules, the ***default*** AAA rules that would apply to this dispute would be the AAA Employment Arbitration Rules and Mediation Procedures ("AAA Employment Rules"), Rule 1 of which states that the AAA Employment Rules "shall be deemed to have [been] made . . . a part of [the parties'] arbitration agreement" ***whenever that agreement provides for arbitration by the AAA "of an employment dispute without specifying particular rules***." AAA Employment Rule 1.

*Pugh*, 660 F. Supp. 3d at 725 (brackets in original) (emphasis added). The *Pugh* Court went on to explain that application of the AAA Employment Rules, with their requirement that the putative employer pay arbitration expenses, "obviates the plaintiffs'—and any similarly situated potential claimants'—concerns about shouldering part of the costs of arbitration." *Id.* at 726.

Likewise, here, once the AAA Commercial Rules were severed from the Agreement, the Agreement became silent as to which rules apply, but still called for arbitration to be administered by the AAA. Bunch Decl., R.31-2, Ex. 1, PageID#328, ¶ 11. Because this is an employment-based dispute, the AAA Employment Rules govern by default, and the District Court observed as much. Order, R.55, PageID#1306. The Order's acknowledgment of this practical reality does not amount to contract reformation.

Plaintiffs' entire appeal therefore misses the mark. Severance is clearly permissible pursuant to the Agreement and Michigan law, Defendants did not request contract reformation, and the District Court did not unilaterally or impermissibly reform the Agreement. The Order dismissing this case in favor of arbitration should be affirmed.

### 3. The Arbitration Agreement Remains Enforceable Absent The District Court's Observation Concerning The Employment Rules

Even if the District Court's observation that the AAA Employment Rules apply here was somehow improper—which it was not—Plaintiffs provide no basis for this Court to reverse with instructions to the District Court that the arbitration agreement as a whole is otherwise unenforceable. Plaintiffs argue that Michigan courts "are not permitted to unilaterally replace agreed-upon terms with new ones just to rescue an otherwise unenforceable contract." Appellants' Br. at 32 (citation omitted).[6] But the Agreement is not "otherwise unenforceable." The arbitration agreement can be enforced absent the portion calling for application of the AAA Commercial Rules, and the District Court made no finding to the contrary.

Plaintiffs cite no relevant or persuasive authority to support the proposition that the arbitration agreement must be governed by a set of rules to be enforceable or that the District Court assumed as much. The only case Plaintiffs cite in support

---

[6] Citations to Appellants' Brief are made to the page number assigned by the Court's electronic filing system in the top right corner of each page.

of this claim is nonbinding authority from the First Circuit in which the court ruled in favor of severing a key provision of an arbitration agreement. *Id.* (citing *Kristian v. Comcast Corp.*, 446 F.3d 25, 62 (1st Cir. 2006)).

In *Kristian*, the First Circuit Court of Appeals endorsed the severance of a class action waiver that "comprise[d] the second full paragraph of the section in the Policies & Practices describing the terms of the mandatory, binding arbitration regime." *Id.* In so doing, the court observed, as Appellants cite, that "[t]ypically, courts prefer declaring an arbitration agreement unenforceable rather than using severance as a remedy when fundamental elements of the arbitration regime are at issue." *Id.* (citations omitted). The court nevertheless undertook what it characterized as "drastic rewriting," severing the class action waiver, in large part relying on the agreement's savings clause, which contemplated the class action waiver could be invalidated without affecting the enforceability of the remainder of the agreement. *Id.* at 62–63.

*Kristian* therefore supports the District Court's action below. In *Kristian*, the court struck a provision of an arbitration agreement, a provision it characterized as fundamental, because the agreement itself contemplated that such a provision could be severed and that the rest of the agreement would remain enforceable. Moreover, the instant case does not involve the "drastic rewriting" of an arbitration agreement, but only the removal of five words. *Kristian* cannot support a conclusion that the

Agreement or its arbitration provision are unenforceable, nor does it stand for the proposition that the District Court acted inappropriately by severing the arbitration agreement's choice-of-rules clause. Plaintiffs cite no other case law in support of their contention that the arbitration agreement must be governed by a set of rules in order be enforceable.

Plaintiffs further cite no portion of the District Court's opinion to support the bald assertion that the District Court "rightly recognized that the arbitration contract couldn't be enforced without rules to govern it." Appellants' Br. at 12. In fact, the District Court found the opposite—that the Agreement was fully enforceable absent the provision calling for application of the AAA Commercial Rules. In finding the cost-splitting provision severable, the District Court cited a 1975 opinion from this Court in explaining, "[I]llegal contract provisions should not render the entire contract void unless the forbidden provision is so basic to the whole scheme of a contract and so interwoven with all its terms that it must stand or fall as an entity." Order, R.55, PageID#1306 (quoting *Chattanooga Mailers' Union, Loc. No. 92 v. The Chattanooga News Free Press Co.*, 524 F.2d 1305, 1313 (6th Cir. 1975)) (brackets in original). There is no language in the District Court's order indicating that the AAA Commercial Rules are so basic to the arbitral scheme that the arbitration agreement is unenforceable without them. *See generally id.*, PageID#1305–06. In addition, the *Pugh* case on which the District Court relied

explicitly held: "The court finds, in sum, that ***the remainder of the arbitration agreement***—aside from the provision incorporating the AAA Commercial Rules, which will be severed—***is binding and enforceable***." *Pugh*, 660 F. Supp. 3d at 727 (emphasis added).

Plaintiffs' confusion, then, apparently stems from the District Court's use of the word "must" in its observation that "the agreement must be governed by the AAA's default employment arbitration rules." R.55, PageID#1306. This confusion is easily explained by the basic premise of the District Court's ruling. The District Court held that the arbitration agreement, which calls for arbitration before the AAA, was fully enforceable, except for that portion calling for application of the AAA Commercial Rules. Absent that portion, the Parties still must proceed to arbitration before the AAA. The AAA will then, with or without the District Court's acknowledgment, apply the default rules it possesses to govern employment disputes—its Employment Rules. The AAA Employment Rules must apply because they are the AAA's default rules, not because the District Court directed it to be so.

Moreover, Plaintiffs do not argue that the District Court erred in severing the AAA Commercial Rules. They argue the error was in "rewriting" the agreement to call for the application of the AAA Employment Rules. Thus, assuming *arguendo* Plaintiffs prevail in convincing this Court that acknowledgment of the AAA Employment Rules was somehow improper, the remedy is not to render the

arbitration agreements unenforceable because the cost-splitting provision was improperly severed (which Plaintiffs do not argue). The appropriate remedy is to reverse only that portion of the District Court's order opining that the AAA Employment Rules apply, because the arbitration agreements are fully enforceable without a choice-of-rules provision.

This Court should reject Plaintiffs' attempt to conflate the purported unenforceability of the provision calling for application of the AAA Commercial Rules with the unenforceability of the arbitration agreement itself. The latter does not depend on the former. The District Court made no finding that the arbitration agreement cannot be enforced without the AAA Commercial Rules and it made no error in acknowledge that the AAA Employment Rules apply to this dispute going forward.

## VII.  CONCLUSION

In light of the foregoing, the well-reasoned Judgment of the District Court should be affirmed in full.

Dated:     October 21, 2024                    Respectfully submitted,


                                              */s/ Nicole S. LeFave*
                                              Nicole S. LeFave
                                              Neil B. Pioch
                                              Andrew Klaben-Finegold
                                              LITTLER MENDELSON, P.C.
                                              500 Woodward Avenue, Suite 2600
                                              Detroit, MI  48226-3416
                                              Telephone:  313.446.6400
                                              Facsimile:  313.446.6405
                                              E-mail:     nlefave@littler.com
                                                          npioch@littler.com
                                                          aklaben@littler.com

                                              *Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE, AND TYPE STYLE REQUIREMENTS</u>

Pursuant to Federal Rule of Appellate Procedure 32(a), the undersigned certifies:

- This brief follows the type-volume limitation of Rule 32(a)(7)(B) because the brief does not have over 13,000 words or 1,300 lines of text.

- This brief follows the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in proportionately spaced typeface using 2010 Microsoft Office Word, in 14-point Times New Roman Font.

*/s/ Nicole S. LeFave*
Nicole S. LeFave

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on October 21, 2024, I electronically filed the foregoing *Brief of Appellees* with the Clerk of the Court using the ECF system, which gives notice to all parties by counsel.

*/s/ Nicole S. LeFave*
Nicole S. LeFave

## ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DOCUMENT | RECORD NUMBER (R.#) | PAGE ID NUMBERS (PAGEID#) |
|---|---|---|
| Plaintiffs' Class and Collective Action Complaint | 1 | 0001–96 |
| Plaintiffs' Motion to Send FLSA Notice | 24 | 0140–211 |
| Plaintiffs' Response in Opposition to Defendants' Motion for Extension of Time to Respond to Plaintiffs' Motion to Send FLSA Notice | 27 | 0220–27 |
| Defendants' Rule 12(b)(6) and Rule 12(b)(1) Motion to Dismiss | 31 | 0280–841 |
| • Exhibit A—Declaration of Alicia Bunch in Support of Defendants' Motion to Dismiss | 31-2 | 0320–54 |
| Defendants' Motion to Stay the Briefing on Plaintiffs' Motion to Send FLSA Notice [ECF No. 24] | 32 | 0842–939 |
| Defendants' Response in Opposition to Plaintiffs' Motion to Send FLSA Notice [ECF No. 24] | 33 | 0940–42 |
| Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss | 44 | 1044–1159 |
| Defendants' Reply in Support of their Rule 12(b)(6) and Rule 12(b)(1) Motion to Dismiss | 45 | 1160–1207 |
| Plaintiffs' Notice of Consent to Join (Jamie Lindquist) | 46 | 1208–12 |
| Notice of Supplemental Authority in Support of Defendants' Motion to Dismiss (ECF #31) | 47 | 1213–23 |
| Plaintiffs' Notice of Consent to Join (Chloe Kertesz) | 50 | 1239–43 |
| (Defendants') Declaration of Tyler Curtiss | 51 | 1244–53 |
| Plaintiffs' Notice of Consent to Join (Kimberly Burns) | 53 | 1264–68 |
| Defendants' Reply in Further Support of their Motion to Dismiss and in Opposition to Plaintiffs' Supplemental Declaration of Ms. Kertesz | 54 | 1269–93 |

| DOCUMENT | RECORD NUMBER (R.#) | PAGE ID NUMBERS (PAGEID#) |
|---|---|---|
| Omnibus Opinion and Order | 55 | 1294–1310 |
| Plaintiffs' Notice of Consent to Join (Maggie Iglesias) | 59 | 1316–20 |
| Plaintiffs' Notice of Consent to Join (Genny Rice) | 60 | 1321–25 |
| Plaintiffs' Notice of Consent to Join (Dana Malfara) | 61 | 1326–30 |