No. 24-1509

# In the United States Court of Appeals for the Sixth Circuit

JAMIE GAVIN, ET AL., on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants,*

v.

LADY JANE'S HAIRCUTS FOR MEN HOLDING COMPANY, LLC, ET AL.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Michigan, Detroit
Case No. No. 2:23-cv-12602 (The Hon. Stephen J. Murphy, III)

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

ANDY BILLER
BILLER & KIMBLE LLC
4200 Regent Street
Columbus, OH 43219
(614) 604-8759
*abiller@billerkimble.com*

LAURA FARMWALD
EMILY HUBBARD
ANDREW KIMBLE
BILLER & KIMBLE LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
(513) 715-8712
*lfarmwald@billerkimble.com*

JESSICA GARLAND
GUPTA WESSLER LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(415) 573-0336
*jessie@guptawessler.com*

MATTHEW W.H. WESSLER
GUPTA WESSLER LLP
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1743
*matt@guptawessler.com*

*Counsel for Plaintiffs-Appellants*

December 11, 2024

# **TABLE OF CONTENTS**

Table of authorities ............................................................................... ii

Introduction ........................................................................................ 1

Argument ............................................................................................2

I.    The salon's contract did not expressly authorize the district
      court to engage in line editing. ..............................................2

      A.    By its terms, the contract's severability provision does not
            permit a court to line edit the contract. .................................. 4

      B.    The district court's line edit overrode the parties' specific
            intent. ...................................................................................... 9

      C.    The district court's revision constituted impermissible
            reformation. .............................................................................12

II.   The district court should have severed the entire arbitration
      provision. ............................................................................... 13

Conclusion ....................................................................................... 14

i

# TABLE OF AUTHORITIES

## Cases

*Acosta v. City of Mesa,*
718 F.3d 800 (9th Cir. 2013) ............................................................. 7, 12

*Benham v. Farmers' Mutual Fire Insurance Co.,*
131 N.W. 87 (Mich. 1911) .................................................................... 7

*Booker v. Robert Half International, Inc.,*
413 F.3d 77 (D.C. Cir. 2005) .............................................................. 12

*County of Suffolk v. Alcorn,*
266 F.3d 131 (2d Cir. 2001) ............................................................... 10

*Davis v. LaFontaine Motors, Inc.,*
719 N.W.2d 890 (Mich. Ct. App. 2006) ................................................ 5

*Deutsche Post Global Mail, Ltd. v. Conrad,*
116 F. App'x 435 (4th Cir. 2004) ........................................................ 12

*Eaton v. Principal Life Insurance Co.,*
2022 WL 18135583 (M.D. Fla. Dec. 19, 2022) ...................................... 9

*Garter Belt, Inc. v. Van Buren Township,*
66 F. App'x 612 (6th Cir. 2003) ........................................................... 9

*Geib v. Amoco Oil Co.,*
29 F.3d 1050 (6th Cir. 1994) .............................................................. 14

*Kingdomware Technologies, Inc. v. United States,*
579 U.S. 162 (2016) ........................................................................... 11

*Kristian v. Comcast Corp.,*
446 F.3d 25 (1st Cir. 2006).............................................................. 7, 8

*Life Flight Network, LLC v. Metro Aviation, Inc.,*
2017 WL 3388175 (D. Or. Aug. 7, 2017) ............................................... 6

*MacDonald v. CashCall, Inc.,*
883 F.3d 220 (3d Cir. 2018) .............................................................. 13

*Maslowski v. Prospect Funding Partners LLC,*
    978 N.W.2d 447 (Minn. Ct. App. 2022) ................................................................ 8

*Maslowski v. Prospect Funding Partners LLC,*
    994 N.W.2d 293 (Minn. 2023) ................................................................................. 8

*Nallaballi v. Achanta,*
    2011 WL 2555717 (Mich. Ct. App. June 28, 2011) ............................................ 14

*Pearce v. Chrysler Group LLC Pension Plan,*
    893 F.3d 339 (6th Cir. 2018) .................................................................................. 13

*Rory v. Continental Insurance Co.,*
    703 N.W.2d 23 (Mich. 2005) ................................................................................... 9

*Royal Insurance Co. of America v. Orient Overseas Container Line Ltd.,*
    525 F.3d 409 (6th Cir. 2008) .................................................................................. 10

*Shotts v. OP Winter Haven, Inc.,*
    86 So. 3d 456 (Fla. 2011) .......................................................................................... 7

*SinglePoint Direct Solar LLC v. Curiel,*
    2021 WL 3472744 (D. Ariz. Aug. 6, 2021) ......................................................... 2, 8

*SL Town Center Realty, LLC v. Midwest Veterinary Partners, LLC,*
    2023 WL 4835517 (Mich. Ct. App. July 27, 2023) ............................................ 3, 9

*Somerset Imports, Ltd. v. Continental Vintners,*
    790 F.2d 775 (9th Cir. 1986) .................................................................................. 13

*Transamerica Insurance Co. v. Duro Bag Manufacturing Co.,*
    50 F.3d 370 (6th Cir. 1995) .................................................................................... 14

*Union Guardian Trust Co. v. Building Securities Corp.,*
    273 N.W. 424 (Mich. 1937) .................................................................................... 11

*United States v. Ostrander,*
    411 F.3d 684 (6th Cir. 2005) .................................................................................. 11

*Waeschle v. Dragovic,*
    576 F.3d 539 (6th Cir. 2009) .................................................................................. 14

*Weiner v. Tootsie Roll Industries, Inc.*,
  412 F. App'x 224 (11th Cir. 2011) ............................................................. 8

*West Michigan Woods Ltd. Dividend Housing Association Ltd. Partnership v. City of Kalamazoo*,
  2011 WL 4375248 (Mich. Ct. App. Sept. 20, 2011) ................................. 14

*Whitesell Corp. v. Whirlpool Corp.*,
  2009 WL 3672753 (W.D. Mich. Oct. 30, 2009) ................................. 6, 7

## Statutes and Rules

Mich. Ct. R. § 7.305 ............................................................................... 14

## Other Authorities

*Clause*,
  *Black's Law Dictionary* (12th ed. 2024) ................................................. 5

Gregory Klass,
  *Intent to Contract*, 95 Va. L. Rev. 1437 (2009) ...................................... 11

*Provision*,
  *Black's Law Dictionary* (12th ed. 2024) ................................................. 5

*Provision*,
  Oxford English Dictionary (2024) ........................................................... 5

*Reformation*,
  *Black's Law Dictionary* (12th ed. 2024) ................................................. 13

Restatement (Second) of Contracts
  § 203 (1981) ............................................................................................ 10

# INTRODUCTION

The salon's position in its brief has made the question on appeal quite narrow. The salon doesn't contend that the district court was wrong to reject the contract's explicit selection of the AAA commercial rules because they are cost-prohibitive. Nor does the salon challenge the district court's conclusion that the requirement that any arbitration be governed by those rules rendered the contract's arbitration provision unenforceable. Instead, the salon says only that the district court was authorized to line-edit the contract and cut what it calls the five-word rules "phrase" from the middle of a sentence based on the contract's "severability provision."

That is wrong. By its terms, the contract's severability provision only allows a court to sever "provisions" if they are found to be unenforceable. Every authority—from dictionaries to case law—agrees that the plain meaning of "provision" is "a distinct section or clause of a legal document." And the structure of *this* contract confirms the point: it contains eleven distinctly numbered provisions. Indeed, even the salon's own brief refers to these sections of the contract as "provisions." *See* Resp. Br. 7 (recognizing, as but one example, that section eleven of the contract constitutes the "arbitration provision").

Against this plain understanding, the salon is left to argue (at 20 n.4) that the definition of "provision" should simply be extended to cover "phrase[s]." But it offers no persuasive authority for that proposition, and for good reason: There is none.

The contract's severability provision could have been drafted to afford a court "the power to … delete specific words or phrases" in any provision that is found to be "invalid or unenforceable." *See, e.g.*, *SinglePoint Direct Solar LLC v. Curiel*, 2021 WL 3472744, at *4 (D. Ariz. Aug. 6, 2021). Many do. But this contract does not, and Michigan law requires that this choice must be honored.

Ultimately, the district court's line edit overrode the contract's intentional choice to opt out of the AAA's default rules in favor of the commercial rules for any arbitration. In the absence of any contractual authority to make such a change, the district court engaged in impermissible reformation. It should not have done so. The contract gave the court clear instructions about what to do when it found a provision unenforceable: sever the "unenforceable" "provision" and permit "the remaining provisions [to] nevertheless continue in full force." Bunch Decl., R. 31-2, PageID#328. Because the district court failed to follow the contract's explicit command, this Court should reverse.

## ARGUMENT

## I. The salon's contract did not expressly authorize the district court to engage in line editing.

The question in this appeal is narrow. The salon does not dispute that, as written, the contract's arbitration provision is unenforceable because it explicitly selects the AAA's Commercial Rules, that, as the district court found (at 11), are "cost-prohibitive." *See* Resp. Br. 17. The salon also now agrees that, under Michigan law,

the district court did lack the power to remedy that illegality by reforming the contract. *See* Resp. Br. 23 (recognizing that there was no "fraud or mutual mistake" that would justify reformation under Michigan law). And the salon likewise recognizes that, after the U.S. Supreme Court's decision in *Morgan v. Sundance*, courts can no longer apply preferential rules to arbitration contracts that would otherwise not apply to regular contracts. *See* Resp. Br. 16–17.

That leaves the salon with a single argument in defense of the district court's decision. It argues (at 2, 23) that the contract's "severability provision" permitted the district court to line-edit the arbitration provision and strike only the reference to the AAA Commercial Rules. That is wrong. By its terms, the contract's severability provision only authorizes a court to sever an entire "provision" of the contract. Although the contract could have employed language authorizing a court to line edit sentences or otherwise delete specific words or phrases, it did not do so.

That decision must be honored. The contract made a deliberate choice to override the default rules that would normally apply in arbitration in favor of the AAA's commercial rules. And it likewise deliberately restricted a court's power to sever—in the face of an illegality—only distinct provisions of the contract. The district court's decision overrode those explicit choices even though its "primary consideration" should have been the parties' intent. *SL Town Ctr. Realty, LLC v. Midwest Veterinary Partners, LLC*, 2023 WL 4835517, at *8 (Mich. Ct. App. July 27, 2023).

Ultimately, because the court's edit changed the meaning of the contract, it engaged in impermissible reformation. This Court should reverse.

### A.    By its terms, the contract's severability provision does not permit a court to line edit the contract.

In defense of the district court, the salon offers a single argument: that the contract's "severability provision" authorized the district court to line edit any sentence found in the contract and delete words that would otherwise render the contract unenforceable. Resp. Br. 2. In the salon's view (at 9), because the severability provision authorizes a court to sever "any provision" of the contract "without affecting the enforceability of the remaining provisions," the district court was permitted to sever the "five words" within the arbitration provision calling for the application of the AAA commercial rules. Resp. Br. 3, 17.

That is wrong. The severability provision in this contract only permits a court to reject "provisions" that are found to be "unenforceable." That is clear from the plain text of the provision. In full, it says that "If any *provision* of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining *provisions* shall nevertheless continue in full force without being impaired or invalidated in any way." Bunch Decl., R. 31-2, PageID#328 (emphasis added). Severance, in other words, operates only at the provision level, not at the sentence or individual word level. But that is not what the district court did. After holding that the arbitration *provision*'s adoption of the AAA's commercial rules rendered that

provision unenforceable, Op. & Order, R. 55, PageID#1304–05, the court opted to simply delete a few words from the middle of a sentence in the middle of the provision, *id.* PageID#1305–06.

The salon does not disagree. *See* Resp. Br. 23 (noting that the district court "clearly and unmistakably" severed only "the phrase 'under its Commercial Arbitration Rules'" from within "the arbitration provision"). Instead, it argues that the term "provision" in the severability clause should be read to permit a court to sever individual "phrases" found within a provision. Resp. Br. 20 n.4 (arguing that, "[i]n the absence of a precise definition in the document itself," the term "provision" should be construed "to include a sentence, word, or phrase").

No authority supports this odd interpretive theory. Michigan law is clear that courts "must enforce an unambiguous contract according to its plain terms." *Davis v. LaFontaine Motors, Inc.*, 719 N.W.2d 890, 894 (Mich. Ct. App. 2006). And the term "provision" has a clear and unambiguous meaning: It is a "clause" or "a distinct section" of a contract. *Provision* and *Clause*, *Black's Law Dictionary* (12th ed. 2024) (defining a "provision" as "a clause in a statute, contract, or other legal instrument," and defining a clause as "a distinct section or provision of a legal document or instrument"); *see also Provision*, Oxford English Dictionary (2024) (defining contract "provisions" as "clauses or divisions of a legal or formal statement"). Indeed, as courts have repeatedly explained, terms like "provision" and "clause" are "intended

5

to encompass more than just narrow groupings of words separated by commas, at least when the term is used in reference to legal documents such as contracts." *Whitesell Corp. v. Whirlpool Corp.*, 2009 WL 3672753, at *1 (W.D. Mich. Oct. 30, 2009); *see Life Flight Network, LLC v. Metro Aviation, Inc.*, 2017 WL 3388175, at *4 (D. Or. Aug. 7, 2017) ("The word 'clause' is synonymous with the words 'section' and 'provision.'").

And there is no doubt that the reference to "provisions" in this contract was intentional. The contract contains eleven of them, each with one to three paragraphs, and each numbered and given a title in bolded all caps. Bunch Decl., R. 31-2, PageID#327–29. At times, these numbered parts are referred to as "sections," *see, e.g.*, *id.* PageID#327 (referring to "Section 3"), and at other times, as "provisions," *id.* PageID#328. But either way, as the severability clause makes clear, a court is empowered only to sever the entirety of one of these provisions if something within it is found to be illegal or unenforceable.[1]

---

[1] The salon does not argue that the contract's reference to "section" is distinct from its reference to "provision," and for good reason. Both the salon and the district court use the terms interchangeably, for instance by calling section 11 of the contract the "arbitration provision." *See* Resp. Br. 7 ("Included in each Agreement is an arbitration provision, requiring the stylist to arbitrate any dispute related to their provision of hair stylist services, *see, e.g.*, *id.* Ex. 1, PageID#328 ¶ 11."); Dkt. 55 at PageID#1300, 1303 (describing the "arbitration clause" and "arbitration provision" in the employment contract as referring to section 11). That understanding accords with the common usage and definition of "provision." *See supra* at 5–6.

Caselaw reinforces the point. When confronted with similar severability clauses, courts have uniformly held they only "allow provisions, not portions of provisions . . . to be severed." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 476–77 (Fla. 2011) (holding that, under a similar severability provision, a court is "unable to simply sever a sentence from the provision"); *see Whitesell*, 2009 WL 3672753, at *1 (rejecting an interpretation of a similar severability provision that would permit a court to delete "groupings of words" within a clause). This makes sense. When parties choose to specify that only a particular unit of a contract, like a "section[]," is "severable," that choice "indicates that the [parties] did not intend something less than" what it specified "to be grammatically severable." *Acosta v. City of Mesa*, 718 F.3d 800, 820 (9th Cir. 2013); *see Benham v. Farmers' Mut. Fire Ins. Co.*, 131 N.W. 87, 89 (Mich. 1911) (Hooker, J., concurring) (explaining that when "the parties have expressly said in writing that the entire policy shall be void," courts should not be "splitting hairs to make it a different contract").

Against this weight of authority, the salon offers up (at 26–27) only one case—*Kristian v. Comcast Corp.*, 446 F.3d 25, 62 (1st Cir. 2006). But that case only undermines the salon's theory here. In *Kristian*, the court permitted the severance of "a full paragraph" barring class actions in arbitration. *Id.* at 62. But it did so *only* because the text of the contract "specifically" "anticipate[d]" the "severance of the class arbitration bar." *Id.* at 61–62. The opposite is true here. Nothing in the contract

indicates the parties specifically anticipated the five-word cut the district court made to the contract. Instead, all the evidence indicates that the parties specifically intended that the court was not permitted to make such an edit. *See infra* I.C. And as *Kristian* explained, without contractual language explicitly permitting a portion of a provision to be cut, "severing that [portion] would be difficult to justify." 446 F.3d at 62; *see id.* at 61 ("What matters for that analysis is an unmistakable expression in the savings clause that the class arbitration bar is not an indispensable condition of the arbitral forum.").

Of course, had the parties wanted to permit a court to engage in sentence-level line edits, they could have easily said so. Many contracts contain severability provisions that do just that. *See, e.g.*, *Weiner v. Tootsie Roll Indus., Inc.*, 412 F. App'x 224, 228–29 (11th Cir. 2011) (addressing a severability provision granting a court "the power to … delete specific words" in any provision that is found to be "invalid or unenforceable"); *SinglePoint*, 2021 WL 3472744, at *4 (severability provision granting a court that finds "any term or provision … invalid or unenforceable … the power to … delete specific words or phrases" to make the term or provision "valid and enforceable"); *Maslowski v. Prospect Funding Partners LLC*, 978 N.W.2d 447, 459 n.7 (Minn. Ct. App. 2022), *reversed on other grounds*, 994 N.W.2d 293 (Minn. 2023) (severability provision "gran[ting] a court ruling on a dispute between the parties 'the power to modify the scope of such term or provision, [and] to delete specific

words or phrases'"); *Eaton v. Principal Life Ins. Co.*, 2022 WL 18135583, at *9 (M.D. Fla. Dec. 19, 2022) (contract stated "the parties or the court will modify any unenforceable provision so as to make it enforceable under applicable law"); *cf. Garter Belt, Inc. v. Van Buren Twp.*, 66 F. App'x 612, 616 (6th Cir. 2003) (addressing an ordinance's severability provision stating that "[e]very word, sentence, clause and provision of this section is hereby declared to be severable").

Because the severability provision here does not say any of this, however, the district court was not free to engage in the type of line editing that it did. In Michigan "a fundamental tenet of [] jurisprudence is that unambiguous contracts … must be *enforced as written.*" *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005). That, standing alone, justifies reversal here.

## B.    The district court's line edit overrode the parties' specific intent.

The district court's sentence- and word-level approach to severance didn't just violate the plain language of the contract; it also overrode the parties' specific intent in drafting the arbitration provision in the first place. As the salon itself notes, when determining how a severability provision applies, "the primary consideration is the intention of the parties." Resp. Br. 19 (quoting *SL Town Ctr.*, 2023 WL 4835517, at *8). But the district court's decision undermined that intent. That's not just because the parties chose a specific severability provision that only permitted entire "provisions"

to be struck. It's also because the parties expressly contracted to override the very rules the district court imposed when it edited the contract.

As the court itself recognized, its edit did not just remove the contract's chosen arbitration rules, it *changed* which rules would govern arbitration under the contract. *See* Op. & Order, R. 55, PageID#1306 (noting that, as a result of its line edit, "the agreement must be governed by the AAA's default employment rules"). But the parties had made an explicit choice to contract out of the "default employment rules" in favor of the AAA's commercial rules. That was by design. As Ms. Gavin explained in the opening brief (at 28), if the salon had the default employment rules apply to any arbitration, that could have been construed against the salon in disputes (like this one) over whether its workers were employees or independent contractors. The salon therefore made a strategic choice in drafting the contract to apply the commercial rules to support its attempt to classify its workers as independent contractors.

That explicit choice to alter the standard rules highlights the parties' specific intent *not* to have the default AAA rules apply to any arbitration. After all, as courts have explained, "[w]ell-founded principles of contract law establish that … 'added terms are given greater weight than standardized terms.'" *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 420 (6th Cir. 2008) (quoting Restatement (Second) of Contracts § 203 (1981)); *see Cnty. of Suffolk v. Alcorn*, 266 F.3d 131, 139 (2d Cir. 2001). By "opt[ing] out of the default" rules, in other words, the parties "generate[d]

value-creating information" that emphasized their choice was an intentional one. Gregory Klass, *Intent to Contract*, 95 Va. L. Rev. 1437, 1462 (2009).

And make no mistake: the contract's choice to opt out of the default employment rules was not optional. To the contrary, it signaled a clear intent to ensure that any arbitration could not occur without using the commercial rules. That much is clear from the plain language of the arbitration provision, which specifies that "arbitration proceedings *shall* be administered by the American Arbitration Association under its Commercial Arbitration Rules." Bunch Decl., R. 31-2, PageID#328 (emphasis added); *see Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) (noting that the use of "shall" "imposes a mandatory duty"); *see also United States v. Ostrander*, 411 F.3d 684, 688 (6th Cir. 2005) (explaining that the use of the word "shall" "create[s] a mandatory command"). Contrast that unequivocal command with the contract's reference to the chosen arbitration *forum*—which provides that, if the chosen *forum* is unavailable, arbitration must still proceed via an alternative pathway. *See* Bunch Decl., R. 31-2, PageID#328 ("If the American Arbitration Association is unwilling or unable to administer the arbitration, then an arbitrator agreed upon by the parties shall administer the arbitration in accordance with the [Commercial] Arbitration Rules."). The contract provides for no similar alternative in the event that the commercial rules don't apply. *See Union Guardian Tr. Co. v. Bldg. Sec. Corp.*, 273 N.W. 424, 429 (Mich. 1937) (explaining that when a "contract was

carefully drawn and made provision for" specific "contingencies," "it may safely be presumed that none of the parties intended that something in addition to its provisions should govern").

In short, because the district court's line edit overrode the parties' explicit intent to depart from the default rules, it ran afoul of Michigan contract law yet again.

## C.    The district court's revision constituted impermissible reformation.

Falling back, the salon argues that the district court's edit was not reformation—which it admits would be impermissible—because it did not "write" or "rewrite" any part of the contract's text. Resp. Br. 5, 11–12, 17. Wrong again.

As numerous courts have recognized, "[e]xcis[ing] single words (or groups of individual words) . . . in order to save" a document *is* "rewriting" the document. *Acosta*, 718 F.3d at 800; *see Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 85 (D.C. Cir. 2005) (explaining that "hacking away the unenforceable parts" of a contract to change it is effectively "rewriting the contract [rather] than fulfilling the intent of the parties"); *Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 440 (4th Cir. 2004) (recognizing that "cross[ing] out the dominant language or words from a single [] sentence" rather than cutting an entire "clause or separate sentence" "would constitute an impermissible rewriting"). And that type of judicial rewriting constitutes reformation because it attempts to "modify" a contract's meaning. *Reformation, Black's Law*

*Dictionary* (12th ed. 2024) (defining reformation as a "remedy by which a court will modify a written agreement"); *see Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 347 (6th Cir. 2018) ("Reformation is the judicial reforming *or* re-writing of a document[.]" (emphasis added)).

That is especially true when "the parties expressly undertook to define the meaning of" a key term and the cut would "clothe" the term with "a different meaning." *Somerset Imps, Ltd. v. Cont'l Vintners*, 790 F.2d 775, 781–82 (9th Cir. 1986) (noting that, in such a case, a court's changes are "not severance but reformation"). That's precisely what happened here. The parties expressly opted out of the default rules that would apply to any arbitration and chose instead a different set of rules. Yet the district court's edit reinstated the very rules the contract went out of its way to avoid. *See supra* I.B. That constitutes "an impermissible rewriting of the contract." *See MacDonald v. CashCall, Inc.*, 883 F.3d 220, 230–31 (3d Cir. 2018).

## II.    The district court should have severed the entire arbitration provision.

**A.** After finding the arbitration provision unenforceable as written, the district court should have done what the severability provision instructed—refuse to enforce the arbitration provision in its entirety but allow "the remaining provisions [to] nevertheless continue in full force." Bunch Decl., R. 31-2, PageID#328.

That's what Michigan courts routinely do when interpreting similar severability clauses. When a "severability clause" states that "[e]very provision of

[an] Agreement is intended to be severable . . . if declared to be illegal or invalid," Michigan courts sever the entire illegal "provision" when they find something invalid in it. *Nallaballi v. Achanta*, 2011 WL 2555717, at *5 (Mich. Ct. App. June 28, 2011); *see, e.g.*, *W. Michigan Woods Ltd. Dividend Hous. Ass'n Ltd. P'ship v. City of Kalamazoo*, 2011 WL 4375248, at *5 (Mich. Ct. App. Sept. 20, 2011) (holding that, where a "severability provision is an unambiguous term of the contract," it requires a court to sever the entirety of an illegal provision). The district court should have done that here.

**B.** To the extent this Court remains unconvinced, however, it could certify the question to the Michigan Supreme Court. *See* Mich. Ct. R. § 7.305(B)(1) (permitting the Michigan Supreme Court to address questions of Michigan law that have been certified by a federal court). That's because, when federal courts find state law rules of contract construction "unsettled," the Michigan Supreme Court is "better suited" to provide that answer. *Waeschle v. Dragovic*, 576 F.3d 539, 551 (6th Cir. 2009); *see Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (explaining that certification to a state's highest court is proper when "state law is unsettled"). And that is especially true for the "important" issues of state law that this case presents. *See Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1052 (6th Cir. 1994).

## CONCLUSION

The district court's dismissal in favor of compulsory arbitration should be reversed.

Respectfully submitted,

/s/ Jessica Garland
JESSICA GARLAND
GUPTA WESSLER LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(415) 573-0336
jessie@guptawessler.com

MATTHEW W.H. WESSLER
GUPTA WESSLER LLP
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1743
matt@guptawessler.com

ANDY BILLER
BILLER & KIMBLE LLC
4200 Regent Street
Columbus, OH 43219
(614) 604-8759
abiller@billerkimble.com

LAURA FARMWALD
EMILY HUBBARD
ANDREW KIMBLE
BILLER & KIMBLE LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
(513) 715-8712

December 11, 2024                    *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,582 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

December 11, 2024                                        */s/ Jessica Garland*
                                                        Jessica Garland

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Sixth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jessica Garland*
Jessica Garland